IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| POLLY NELSON, | ] |
| Plaintiff | ] |
| Vs. | ] |
| | ] Case No.: |
| BRAIN STATE TECHNOLOGIES, LLC; BRAINTELLECT, LLC; and LEE GERDES, | ] |
| Defendants | ] |

## COMPLAINT

Polly Nelson, the plaintiff, brings this action against Brain State Technologies, LLC, Braintellect, LLC and Lee Gerdes, the defendants.

### PARTIES

1. Ms. Nelson is an individual residing in Williamson County, Tennessee. Ms. Nelson is therefore a citizen and resident of the state of Tennessee for purposes of 28 U.S.C. § 1332.

2. Brain State Technologies, LLC ("BST") is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona. BST is therefore a citizen and resident of the state of Arizona for purposes of 28 U.S.C. § 1332.

3. Braintellect, LLC is an Arizona limited liability company with its principal place of business in Scottsdale, Arizona. Braintellect is therefore a citizen and resident of the state of Arizona for purposes of 28 U.S.C. § 1332.

4.      Lee Gerdes is an individual residing in Arizona. Mr. Gerdes is therefore a citizen and resident of the state of Arizona for purposes of 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

5.      Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, as set forth in more detail below, and is between citizens of different states. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 123.

6.      Jurisdiction and venue are also proper in this Court because a substantial part of the events or omissions giving rise to this cause of action accrued in Williamson County, Tennessee, where Defendants transact or have transacted business.

7.      Jurisdiction and venue are also proper in this Court pursuant to Tenn. Code Ann. § 47-18-113 because this cause of action arises out of, in part, unfair or deceptive acts or practices committed by Defendants in Williamson County, Tennessee, where Defendants transact or have transacted business.

## GENERAL FACTS

8.      On December 9, 2008, Ms. Nelson entered into a "Non Exclusive License Agreement" with BST such that Ms. Nelson, the purported licensee, would purchase one license granting her the right to use certain technology developed by BST, the purported licensor, for Ms. Nelson's own business purposes at a location in Williamson County, Tennessee. Defendants are in possession of the December 9, 2008 agreement.

9.      Pursuant to the December 9, 2008 agreement, Ms. Nelson agreed to pay, and in fact did pay, an initial license fee of $39,150.00 and ongoing monthly license fees of $500.00.

10. On April 13, 2009, Ms. Nelson and BST executed an addendum to the December 9, 2008 agreement such that Ms. Nelson, the purported licensee, would purchase an additional license granting her the right to use certain technology developed by BST, the purported licensor, for Ms. Nelson's own business purposes at the same location in Williamson County, Tennessee. Defendants are in possession of the April 13, 2009 addendum.

11. Pursuant to the April 13, 2009 addendum, Ms. Nelson agreed to pay, and in fact did pay, an initial license fee of $27,900.00 and ongoing monthly license fees of $250.00 for the additional license.

12. On May 25, 2011, Ms. Nelson entered into a second "Non Exclusive License Agreement" with BST such that Ms. Nelson, the purported licensee, would purchase one license granting her the right to use certain technology developed by BST, the purported licensor, for Ms. Nelson's own business purposes at a second location in Williamson County, Tennessee. Defendants are in possession of the May 25, 2011 agreement.

13. Pursuant to the May 25, 2011 agreement, Ms. Nelson agreed to pay, and in fact did pay, an initial license fee of $25,010.00 and ongoing monthly license fees of $500.00.

14. Ms. Nelson terminated all of her licenses effective August 31, 2015.

## CLAIMS AGAINST BST

15. The December 9, 2008 agreement, the April 13, 2009 addendum and the May 25, 2011 agreement were all drafted by BST or one or more BST representatives.

16. Both the December 9, 2008 and May 25, 2011 agreements contain language indicating they are not "granting a franchise as defined in 16 CFR Section 436.2(a)," and BST accordingly never furnished Ms. Nelson with disclosure statements as referenced in 16 CFR Section 436.2(a).

17. Despite BST's representations that it was not selling Ms. Nelson franchises, it in fact was because Ms. Nelson obtained the right to operate a business and to offer and sell services that are identified or associated with BST's trademark, BST exerted a significant degree of control over Ms. Nelson's method of operation, and as a condition of commencing operation Ms. Nelson made a required payment and committed to making ongoing required payments to BST.

18. BST's selling of franchises to Ms. Nelson when it represented it was not was an unfair and deceptive practice and violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.

19. BST's failure to furnish Ms. Nelson with disclosure statements as referenced in 16 CFR Section 436.2(a) was an unfair and deceptive practice and violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.

20. BST further engaged in unfair and deceptive practices against Ms. Nelson and violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq., by failing to provide accurate information concerning BST and its relationship with its purported licensees, the extent to which BST would control or attempt to control purported licensees and their use of the BST technology, the arbitrary nature of rules that BST would or could impose upon purported licensees, the uncertain regulatory status of the BST technology as a health care product, BST's financial condition, BST's inability to sustain its operations without continuous infusions of capital, and the ability and intention of BST to compete directly and aggressively with its purported licensees, among other matters.

21. Ms. Nelson suffered a loss of money as a result of BST's unfair and deceptive practices because she otherwise would not have purchased or continued investing in the

franchises.

22. BST's unfair and deceptive practices were willful and knowing.

23. BST's unfair and deceptive practices also constituted fraudulent inducement.

24. Additionally, as discussed in more detail below, BST was engaged in civil conspiracies with Braintellect and Mr. Gerdes.

25. Additionally, as discussed in more detail below, BST is vicariously liable for the conduct of Braintellect because they were engaged in a joint venture to profit from Ms. Nelson's purchase of and continued investment in the franchises.

26. Additionally, as discussed in more detail below, BST is vicariously liable for the conduct of Mr. Gerdes because Mr. Gerdes was acting within the course and scope of his employment with BST.

## CLAIMS AGAINST BRAINTELLECT

27. BST required Ms. Nelson to purchase from Braintellect certain equipment and supplies necessary to operate the franchises.

28. Braintellect is vicariously liable for BST's unfair and deceptive practices because Braintellect and BST were engaged in a joint venture to profit from Ms. Nelson's purchase of and continued investment in the franchises.

29. Braintellect and BST's joint venture also constituted a civil conspiracy because they had a common plan to fraudulently induce Ms. Nelson to purchase franchises from BST and to then profit from Ms. Nelson's purchase of and continued investment in the franchises.

## CLAIMS AGAINST MR. GERDES

30. Mr. Gerdes is the CEO of BST.

31. In his capacity as CEO and during the course and scope of his employment with BST, Mr. Gerdes disparaged the goods, services and business of Ms. Nelson by making false and misleading representations of fact to Ms. Nelson's prospective business relationships. One such disparagement occurred in a June 23, 2015 email from Mr. Gerdes to one of Ms. Nelson's prospective business relationships. Defendants are in possession of the June 23, 2015 email.

32. Mr. Gerdes' disparagement was an unfair and deceptive practice and violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.

33. Ms. Nelson suffered a loss of money, property or thing of value as a result of the unfair and deceptive practice.

34. Mr. Gerdes' unfair and deceptive practices were willful and knowing.

35. Also in his capacity as CEO and during the course and scope of his employment with BST, Mr. Gerdes unfairly and improperly interfered with Ms. Nelson's prospective business relationships by making disparaging statements about Ms. Nelson and her business, by preventing Ms. Nelson from pursuing prospective business relationships and by otherwise engaging in deceptive and unfair competition with Ms. Nelson. One such interference occurred in a June 23, 2015 email from Mr. Gerdes to one of Ms. Nelson's prospective business relationships. Defendants are in possession of the June 23, 2015 email.

36. Mr. Gerdes had knowledge of the prospective business relationships he interfered with, and his interference was intentional and improper and caused Ms. Nelson damage.

37. Mr. Gerdes' unfair and deceptive practices and improper interference with Ms. Nelson's prospective business relationships also constituted a civil conspiracy with BST, because Mr. Gerdes and BST had a common plan to fraudulently induce Ms. Nelson to purchase

franchises from BST and to then deceptively and unfairly compete with Ms. Nelson for her prospective business relationships.

## DAMAGES

38. Ms. Nelson has paid $182,107.31 to BST, all of which she would not have paid but for Defendants' wrongful conduct.

39. Ms. Nelson has paid $29,449.34 to Braintellect, all of which she would not have paid but for Defendants' wrongful conduct.

40. Ms. Nelson has suffered other losses of money, property or things of value, such as loss of prospective business, loss of goodwill and loss of earnings and earning capacity, all of which she would not have suffered but for Defendants' wrongful conduct.

## DEMAND FOR RELIEF

41. Ms. Nelson seeks a judgment against Defendants, jointly and severely, for her actual damages.

42. Ms. Nelson seeks a judgment against Defendants, jointly and severely, for treble damages pursuant to Tenn. Code Ann. § 47-18-109.

43. Ms. Nelson seeks a judgment against Defendants, jointly and severely, for her attorney fees and costs pursuant to Tenn. Code Ann. § 47-18-109.

44. In the alternative, Ms. Nelson seeks rescission of all of her contracts with Defendants and a judgment against Defendants, jointly and severely, for her incidental damages.

45. Ms. Nelson seeks a judgment against Defendants, jointly and severely, for punitive damages due to their intentional and fraudulent conduct.

46. Ms. Nelson seeks a judgment against Defendants, jointly and severely, for pre- and post-judgment interest.

47. Ms. Nelson seeks a judgment against Defendants, jointly and severely, taxing Defendants with the costs of this action.

48. Ms. Nelson requests a trial by jury.

49. Ms. Nelson seeks other relief as justice may require.

Respectfully Submitted,

THE HIGGINS FIRM, PLLC

_____
BENJAMIN J. MILLER, BPR No. 25575
Attorney for Plaintiff
525 4th Avenue South
Nashville, TN 37210
(615) 353-0930